**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )   Case No. 18-CR-244 |
| | ) |
| ERICK VALENCIA-SALAZAR, | ) |
| also known as "El 85," "Ochenta | ) |
| y Cinco," "Erick," "Eric," "Erik," | ) |
| "Commandante," "Commander," | ) |
| "Matazeta," and "Mono," | ) |
| | ) |
| Defendant. | ) |

## JOINT STATEMENT OF STIPULATED FACTS

The statement of facts does not purport to include all of the Defendant's illegal conduct during the course of his charged offense. Nor does it purport to be an inclusive recitation of all that the Defendant heard, knew, or witnessed concerning the illegal activities of himself or those of his conspirators. It represents sufficient information for the Court to find a factual basis for accepting the Defendant's guilty plea in the above-captioned matter and is not intended to represent all of the Defendant's relevant conduct for sentencing purposes. Had the Defendant proceeded to trial, the Defendant agrees that the Government's evidence would show the following beyond a reasonable doubt:

1.     From at least in or about 2005 and continuing thereafter up to and including August 9, 2018, within the countries of Mexico, the United States, and elsewhere, the Defendant, ERICK VALENCIA-SALAZAR, did unlawfully, knowingly, willfully, and intentionally combine, conspire, confederate and agree with other conspirators, both known and unknown, to commit the following offense against the United States, to wit to distribute at least four hundred fifty (450) kilograms or more of cocaine, a Schedule II controlled substance, intending and knowing that it

would unlawfully be imported into the United States in violation of 21 U.S.C. §§ 959, 960(a)(3), 960(b)(1)(B)(ii), and 963, and 18 U.S.C. § 2.

2.    During the course and in furtherance of the conspiracy, from at least 2005 to 2010, the Defendant was a member of a Mexico-based drug trafficking organization (DTO) known as the Milenio Cartel. In approximately 2010, many members of the Milenio Cartel, including the Defendant, splintered off and formed a new, Mexico-based DTO, which became known as the Cartel de Jalisco Nueva Generacion (CJNG).

3.    While a member of the Milenio Cartel, the Defendant was aware that the cartel was importing multi-ton shipments of cocaine from South America into Mexico each year and then sending most of that cocaine to the United States.

4.    As a member of the Milenio Cartel, the Defendant regularly received pistols and rifles, including AK-47 and AR-15 rifles, from the cartel leadership and distributed the firearms to the cartel's gunmen, also known as "sicarios," to use in battles with rival cartels for control of territory within Mexico and drug trafficking routes to the United States. The Defendant had approximately ten subordinates who assisted him with distributing the firearms.

5.    The Defendant also was responsible for paying the Milenio Cartel's sicarios with cash, in U.S. dollars, that the Defendant received from Milenio Cartel leadership.

6.    As a member of the Milenio Cartel, the Defendant received approximately ten kilograms of cocaine each month that he distributed to local distributors and retailers, primarily in Colima, Mexico. The Defendant had approximately twenty subordinates who assisted him with distribution of cocaine to the local sellers. The Defendant was aware that the Milenio Cartel used a portion of the proceeds from these sales to invest in shipments of cocaine destined for the United States.

7.     In approximately 2010, the Defendant, Nemesio Oseguera Gonzalez (also known as "Mencho"), and others founded a DTO that became known as the CJNG. As a founding member of the CJNG, the Defendant held a top leadership position within the CJNG at least until his arrest in Mexico in March 2012.

8.     Prior to the Defendant's 2012 arrest, and while the Defendant held a leadership position, the CJNG was sending thousands of kilograms of cocaine to the United States each month.   The CJNG also was unlawfully importing bulk quantities of methamphetamine and marijuana into the United States during that same time period.

9.     The Defendant's responsibilities in the CJNG included, but were not limited to, recruiting CJNG members and obtaining information about rival cartel members that the CJNG would then use to locate and kill its enemies. The purpose of killing the rival cartel members was, at least in part, to gain control of all drug tracking operations within particular territories in Mexico and drug trafficking routes to the United States.

10.     Approximately 300 to 400 CJNG members reported to individuals who reported to the Defendant, either directly or indirectly. Many of the Defendant's subordinates were armed with pistols and rifles and carried out acts of violence against rival drug traffickers at the Defendant's direction.

11.     For example, in approximately June of 2010, the Defendant directed a subordinate to locate and kidnap the father-in-law of a rival cartel leader. The intended purpose of the kidnapping was to force the father-in-law to provide the location of the rival cartel leader so that the CJNG could kill him. The Defendant's subordinates kidnapped the father-in-law, but he ultimately escaped.

12.     During and in furtherance of the conspiracy, the Defendant regularly carried a pistol

to meetings to discuss drug trafficking and to deliver weapons and money to other cartel members.

13.    Following his release from prison in Mexico in approximately December 2017, the Defendant attempted to procure cocaine on multiple occasions and distributed kilogram quantities of cocaine that he received from Mencho on at least one occasion.

14.    The Defendant admits that the total amount of cocaine involved in this conspiracy for which he had actual knowledge and involvement was well over 450 kilograms.

15.    The Defendant admits that he was aware that more than 450 kilograms of the cocaine was going to be illegally imported into the United States for further distribution.

16.    The Defendant agrees venue and jurisdiction lie with this Court pursuant to 18 U.S.C. § 3238.

17.    The Defendant also agrees that his participation as a conspirator in the above-described acts were in all respects knowing, intentional, and willful, reflecting an intention and deliberation to do something the law forbids, and were not in any way the product of any accident, mistake of law or fact, duress, entrapment, or public authority.

18.    With his signature below and that of his counsel, the Defendant agrees that he has fully adopted this statement of facts as his own statement. The Defendant is adopting this statement of facts because it is a true and correct summary of the Defendant's own conduct.

//

//

//

//

//

//

4

19.    The Defendant is pleading guilty because the Defendant is in fact guilty.

Respectfully submitted,

MARGARET A. MOESER
Chief
Money Laundering, Narcotics
and Forfeiture Section
Criminal Division
U.S. Department of Justice

Date: 3/12/26          By:  _____

NICOLE LOCKHART
LERNIK BEGIAN
DOUGLAS MEISEL
Trial Attorneys

Approved by:

Date: 3/12/26          By:  _____

KAITLIN J. SAHNI
Acting Unit Chief
Narcotic and Dangerous Drug Unit

## DEFENDANT'S ACKNOWLEDGMENT

I have reviewed this Statement of Facts with the assistance of an English-Spanish interpreter, and have discussed it at length with my attorneys, Bonnie Klapper, Esq., and Daniela Posada, Esq., who speak Spanish. This Statement of Facts has been translated into Spanish for me. I understand that the English version controls. I fully understand this Statement of Facts and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me, nor am I under the influence of anything that could impede my ability to understand this Statement of Facts fully.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in the accompanying Plea Agreement dated March 12, 2026. I am satisfied with the legal services provided by my attorney in connection with this Statement of Facts, the accompanying Plea Agreement, and all matters related to it.

_____          04/07/2026
ERICK VALENCIA-SALAZAR                      Date
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I am the Defendant's attorney. I have fully explained to the Defendant, through an English-Spanish interpreter, the Defendant's rights and the applicable provisions of the Sentencing Guidelines. I have carefully reviewed every part of this Statement of Facts with the Defendant. The Defendant is agreeing to this Statement of Facts voluntarily, intelligently, and with full knowledge of all consequences of the Defendant's plea of guilty.

_____          04/07/2026
BONNIE KLAPPER, ESQ. and/or                 Date
DANIELA POSADA, ESQ.
Attorneys for Defendant

6